**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

---

WILLIAM GERARD BARDEN and
SONSARAY STANSFIELD,
individually and on behalf of all
others similarly situated,

     *Plaintiffs*,

   v.

BEAR NAKED, INC.

     *Defendant.*

Case No.


JURY TRIAL DEMANDED

---

### CLASS ACTION COMPLAINT

  Plaintiffs, William Gerard Barden and Sonsaray Stansfield, ("hereinafter Plaintiffs"),

individually, and on behalf of all other similarly situated persons, by and through their

undersigned counsel, bring this class action complaint against defendant, Bear Naked, Inc.,

(hereinafter "Defendant" or "Bear Naked").

### SUMMARY OF THE CASE

  1.  Bear Naked, Inc., ("Bear Naked" or "Defendant") is a company that produces

whole grain granola food products which consist of snack bars, real nut energy bars, and trail

mix snack pouches[1]. Bear Naked, Inc. claims to produce and manufacture "100% Natural"

granola based food products made from all natural ingredients.

  2.  Bear Naked manufactures, markets and labels a line of real nut energy bar

products sold with a label that, in describing the contents, displays the words "100% Natural"

---

[1] http://www.bearnaked.com/en_US/fuel_up.html

(hereinafter referred to as "Real Nut Energy Bars"). In truth, Defendant's Real Nut Energy Bars contain synthetic chemical compounds known as tocopherols, glycerin and lecithin[2].

3.    Defendant knowingly and purposefully failed to disclose to its consumers that its Real Nut Energy Bars contain synthetic chemical compounds, making these products falsely labeled and not actually "100% Natural." The Real Nut Energy Bars are listed and/or otherwise depicted in Attachment "A" hereto, and are:

- Bear Naked's 100% Natural Real Nut Energy Bar, Peanut Butter

- Bear Naked's 100% Natural Real Nut Energy Bar, Maple Nut

- Bear Naked's 100% Natural Real Nut Energy Bar, Almond Cranberry

- Bear Naked's 100% Natural Real Nut Energy Bar, Chocolate Chip Peanut Butter

4.    Defendant knowingly and purposefully failed to disclose to its consumers that the Real Nut Energy Bars are not actually "100% Natural," as they contain synthetic ingredients.  To this day, Defendant has taken no meaningful steps to clear up consumers' misconceptions regarding its product.

5.    As a consequence of Defendant's unfair and deceptive practices, Plaintiffs, and members of the Class, purchased Bear Naked's Real Nut Energy Bars under the false impression that, by purchasing Defendant's Products they would be receiving products that were in fact "100% Natural," or products completely void of synthetic ingredients.

6.    Significantly, **each** consumer has been exposed to the **same** material misrepresentations and/or omissions, which are prominently displayed on the product packaging for the Bear Naked's Real Nut Energy Bars prior to purchasing the product.

---

[2] *See* 7 C.F.R 205.605

7.     Despite the fact that the Real Nut Energy Bars contain synthetic chemical ingredients, the front labels of Defendant's Real Nut Energy Bars display the words "100% Natural."

8.     Defendant's Real Nut Energy Bars mislead consumers into believing the products consist of "100% Natural" ingredients when they in fact contain the synthetic chemical compounds Tocopherols, Glycerin and Lecithin[3].

9.     Under Federal and Florida state law, products such as Defendant's Real Nut Energy Bars are "misbranded" if their "labeling is false or misleading in any particular," or if it does not contain certain information on its labeling. *See* 21 U.S.C. § 343(a); Florida Food Safety Act § 500 *et seq.*; Fla. Stat. §§500.01-500.80 (2014).

10.     Further, any violation of the Florida Food Safety Act also constitutes violations of Florida's Consumer Protection Statues §§501.201-501.213 (2014), Florida Deceptive and Unfair Trade Practice Act, False Advertising pursuant to Fla. Stat. § 817.44 (2014), Breach of Express Warranty; Breach of Implied Warranties for Merchantability and Usage of Trade Pursuant to Fla. Stat. §672.314 (2014), Breach of Implied Warranty pursuant to Uniform Commercial Code §2-314 (2014), Negligence and Unjust Enrichment. In this action, Plaintiffs assert claims under these state statutes, as well as under common law.

11.     For the reasons stated herein, Defendant's Real Nut Energy Bars sold in the United States are misbranded and illegal.

12.     Plaintiffs now seek to stop Defendant's unlawful conduct.

---

[3] *See* 7 C.F.R. 205.605(b)

## PARTIES

13.     Plaintiffs, William Gerard Barden and Sonsaray Stansfield, purchased more than $25.00 worth of Defendant's Real Nut Energy Bars in this State and this District within the four years preceding the filing of this action (the "Class Period").  Specifically, Plaintiff Barden purchased Defendant's Real Nut Energy Bars in or about August 2014, September 2014, and November 2014 at Publix and Walmart grocery stores.  Specifically, Plaintiff Stansfield purchased Defendant's Real Nut Energy Bars in or about September 2014, and October 2014, at Walmart grocery stores.

14.     Plaintiffs are and, throughout the entire class period asserted herein, have been very concerned about, and try to avoid, consuming foods that are not natural—such as foods that contain synthetic or artificial chemical ingredients. For this reason, Plaintiffs were willing to pay a premium price for foods that were "100% Natural."  Based on the "100% Natural" representation on Defendant's Real Nut Energy Bar labels, Plaintiffs and members of the Class reasonably believed the products they purchased were "100% Natural" and relied on this representation in making the purchases thereof.

15.     Not only did Plaintiffs purchase the Real Nut Energy Bars because the labels said they were "100% Natural," Plaintiffs also paid more money for the Products than they would have paid for other similar products that contained synthetic or artificial ingredients.

16.     Had Plaintiffs known the truth—that the Real Nut Energy Bars were not "100% Natural"— they would not have purchased these Products, nor would have paid the premium price for these products.

17.     Defendant, Bear Naked, Inc., is a California Corporation, with its principal place of business located in La Jolla, CA.

18.     Defendant is a corporation that produces, advertises, markets, sells and distributes the Real Nut Energy Bars throughout the United States, including in this State, district, and division.

## JURISDICTION AND VENUE

19.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) a member of the class of Plaintiff is a citizen of a State different from a defendant; and (3) the number of members of all proposed Plaintiff classes in the aggregate is greater than 100.

20.     This Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoings alleged herein occurred in Florida. Defendant also has sufficient minimum contacts with Florida, and has otherwise intentionally availed itself of the markets in Florida through the promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 139(b)(2) and (3) because a substantial part of the events or omissions giving rise to these claims occurred in this District, a substantial part of the property that is the subject of this action is situated in this District, and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## FACTS RELEVANT TO ALL CLAIMS

### Definition of "All-Natural"

22.     Representing that a food product or ingredient is "100% Natural" is a statement of fact, and this term has been defined by the federal governmental agencies that regulate food companies such as Defendant.

23.     Although the Food and Drug Administration (FDA) does not directly regulate the term "natural," the FDA has established a policy defining the outer boundaries of the use of that term by clarifying that a product is not natural if it contains color, artificial flavors, or synthetic substances. [4] Specifically, the FDA states: "the agency will maintain its policy regarding the use of 'natural,' as meaning nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 Fed. Reg. 2302, 2407 (Jan. 6, 2003).

24.     Pursuant to 7 C.F.R. 205.2, an ingredient is synthetic if it is:

[a] substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes.

25.     Similarly, the USDA's Food Safety and Inspection Service ("FSIS") defined a natural product as, "a product that does not contain any artificial or synthetic ingredients and does not contain any ingredient that is more than "minimally processed":

Minimal processing may include: (a) those traditional processes used to make food edible or to preserve it or to make it safe for human consumption, e.g., smoking, roasting, freezing, drying, and fermenting, or (b) those physical processes which do not fundamentally alter the raw product and/or which only separate a whole, intact food into component parts, e.g., grinding meat, separating eggs into albumen and yolk, and pressing fruits to produce juices. Relatively severe processes, e.g., solvent extraction, acid hydrolysis, and chemical bleaching would clearly be considered more than minimal processing…

*See* USDA FSIS, Food Standards and Labeling Policy Book. [5]

26.     A reasonable consumer's understanding of the term "natural" comports with these federal definitions.

---

[4] *See* www.fda.gov/downloads/ForConsumers/ConsumerUpdates/UCM199361.pdf

[5] www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf

27.     A reasonable consumer would also expect that Defendant's Products are what Defendant identifies them to be on its labels (i.e. that they are "100% Natural").

*The Products' Synthetic Ingredients*

28.     **Tocopherols as "natural" preservatives.** Tocopherols are a family of Vitamin E compounds which, typically, are found in leafy green vegetables, vegetable oils, fish and nuts. Tocopherols are commercially manufactured and mass produced in an attempt to utilize them as preservatives that extend the shelf life of products. Since there is usually a long span of time between the product's production and the time of purchase, commercial foodstuffs are typically loaded with preservatives, such as tocopherols, to allow them to remain as fresh as possible for as long as possible. Although said preservatives are fairly effective in extending the longevity of the products, they are still extremely unhealthy. Many cause and/or promote skin problems while others have been reported to cause cancer. According to an article on the use of preservatives to extend the shelf life of products, there is no such thing as a natural preservative, "natural substances that show antimicrobial activity are either not adequate for broad spectrum protection or they have undesirable qualities." [6] Furthermore, taking synthetic vitamin E (tocopherols) can increase the risk of prostate cancer by 17%.

29.     **Glycerin.** Glycerin (or Glycerol) is an alcohol that rarely exists in its free form in nature. It is used in some food products as a sweetener, as a preservative or as a thickening agent. Glycerin is commonly manufactured for commercial use through the hydrolysis of fats and oils during the manufacturing of soap products, from hydrogenolysis of carbohydrates or from petrochemicals. Commercial Glycerin used in food products manufactured by these commonly used methods results in a synthetic substance as recognized by federal regulations. 21 C.F.R §

---

[6] https://www.fromnaturewithlove.com/library/preservatives.asp

172.866; 7 C.F.R. § 205.603; 21 C.F.R § 178.3500. Although Glycerin could, alternatively, be produced through a fermentation process, commercial manufacturers of Glycerin use the synthetic processes, specified above, to make the synthetic version of the alcohol.

30.     **Lecithin.** Bleached lecithin, often sold as soy lecithin, is a byproduct from the manufacturing of soybean oil, and is recognized to be a synthetic additive by federal regulation. 21 U.S.C. 205.605(b). Lecithin has emulsifying properties, and is often added to candy bars to keep cocoa and cocoa butter from separating. Furthermore, it is used in baking products as a leavening agent. Bleached lecithin is manufactured using hydrogen peroxide, another chemical classified as synthetic by federal regulation. 21 U.S.C. 205.605(b)

31.     Defendant uses tocopherols, glycerin, lecithin, and at times, other non-natural ingredients in the food Products that it sells to consumers, and labels the same Products "100% Natural."  Defendant's products contain known synthetic compounds, and their excessive use can lead to: anal irritation, burning sensation, diarrhea, gas, nausea, and stomach cramps, among other side effects.

32.     Bear Naked's food products labeled as "100% Natural" contain synthetic ingredients as identified above. While Bear Naked's "100% Natural" food labels did disclose that they contain these ingredients, those labels did not disclose that these ingredients were synthetic. This is a significant and material omission given Bear Naked's "100% Natural" representation on the food product labels. Based on said representations, an ordinary consumer would expect that none of the ingredients in Defendant's food products would be synthetic or artificial.

33.     According to its labels, Bear Naked's food products contain the following recognized synthetic ingredients identified herein, as follows:

8

- <u>Bear Naked's 100% Real Natural Nut Energy Bar, Peanut Butter:</u> tocopherols and lecithin.

- <u>Bear Naked's 100% Natural Real Nut Energy Bar, Maple Nut:</u> tocopherols and lecithin.

- <u>Bear Naked's 100% Natural Real Nut Energy Bar, Almond Cranberry:</u> tocopherols, lecithin, and glycerin.

- <u>Bear Naked's 100% Natural Real Nut Energy Bar, Chocolate Chip Peanut:</u> tocopherols and lecithin.

34.     The labeling of products as "100% Natural," carries implicit health benefits that are highly important to consumers—benefits that compel consumers to pay a premium price over comparable products that are not 100% natural. Over the past nine years, Bear Naked has cultivated and reinforced a corporate image that has catered to this "100% Natural" theme and has boldly placed this claim on each and every one of its products, despite the fact Bear Naked uses synthetic ingredients in the products identified above.

35.     Bear Naked has used the "100% Natural" label to shape its brand and sell its foods. Yet, the existence of synthetic ingredients in its food renders the use of the label "100% Natural," false and misleading. In manufacturing it products, Bear Naked had a choice between using natural or synthetic and artificial ingredients. It purposefully chose to use synthetic ingredients, but nonetheless labeled its food products as "100% Natural."

**Bear Naked's Products are Misbranded and Illegal**

36.     All containers of Bear Naked Real Nut Energy Bars Products sold in the United States are misbranded, falsely labeled, and as such are illegal.

37.     Their sale constitutes violations of the FDCA, the Florida Food Safety Act, Florida's Consumer Protection Statues §§501.201-501.213 (2014), Florida Deceptive and Unfair Trade Practice Act, False Advertising pursuant to Fla. Stat. § 817.44 (2014), Breach of Express Warranty; Breach of Implied Warranties for Merchantability and Usage of Trade Pursuant to Fla. Stat. §672.314 (2014), Breach of Implied Warranty pursuant to Uniform Commercial Code §2-314 (2014), Negligence and Unjust Enrichment.

38.     With the nutritional and health benefits of "100% Natural" foods becoming widely known, consumer demand for these products has increased rapidly. It was this enormous new market that Defendant hoped to tap with the sale of its Bear Naked Real Nut Energy Bars Products.

39.     Defendant knowingly and intentionally sold these misbranded and falsely labeled products to consumers (including Plaintiffs) with the intent to deceive them.

40.     Plaintiff purchased Bear Naked Real Nut Energy Bars Products within the Class Period.

41.     Despite the prevalence of synthetic ingredients in the Subject Products, the front labels of the Bear Naked Real Nut Energy Bars Products display the words "100% Natural."

42.     Bear Naked Real Nut Energy Bars Products mislead consumers into believing the products consist of only "100% Natural" ingredients, when they in fact contain the synthetic chemical ingredients tocopherols, glycerin, and lecithin.

43.     Had Plaintiffs known that Bear Naked Real Nut Energy Bars Products were not "100% Natural," Plaintiffs would not have purchased these Bear Naked Products.

44.      Had Plaintiffs known that Bear Naked Real Nut Energy Bars Products were illegally sold products, Plaintiffs would not have purchased Bear Naked Products.  Plaintiffs'

reliance was reasonable.  A reasonable consumer would have been misled by Defendant's actions.

45.    With respect to Bear Naked Real Nut Energy Bars Products, Defendant has violated the FDCA and regulations promulgated thereunder.

46.    As a result, Defendant has violated various provisions of the Florida Food Safety Act, Fla. Stat. §§500-01-500.80 (2014).

47.    Defendant has violated Fla. Stat. § 500.11(1)(f) (2014), because words, statements, or other information required, pursuant to the Florida Food Safety Act, to appear on the label or labeling were unlawfully placed upon the label or labeling, as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

48.    Defendant has violated Florida Food Safety Act § 500.04(1) (2014), which makes it unlawful to manufacture, sell, deliver, possess, hold, or offer to sell any misbranded food.

49.    Defendant has violated Fla. Stat. § 500.115 (2014), which provides that, "an advertisement of a food is deemed to be false if it is false or misleading in any particular." Defendant's product label constitutes false advertisement pursuant to Fla. Stat. § 500.115 (2014).

50.    Plaintiffs' claims that Defendant's product labels are misleading and deceptive do not seek to challenge the products' formal name and labeling in areas for which the Food and Drug Administration ("FDA") has promulgated regulations implementing the Federal Food Drug and Cosmetic Act ("FDCA"). Plaintiffs' claims do not seek to contest or enforce the FDCA or FDA regulation requirements. Nor do Plaintiffs seek an interpretation of the FDA regulations. Instead, Plaintiffs' claims are predicated on the fact that the labeling is misleading and deceptive even if it complies with the minimum requirements set forth by the FDA regulations, as the FDA regulations simply set a "floor," or "minimum" requirements.  Indeed, compliance with the

11

minimum requirements is necessary, but is not sufficient to determine if a product's label is false and misleading, and simply does not provide a shield from liability. *See e.g., Wyeth v. Levine*, 129 S. Ct. 1187, 1202 (2009).  Plaintiff's state law claims do not seek to impose labeling requirements that are not identical to those mandatory by federal regulation.

51.     Plaintiffs' state law claims are aimed at Defendant's intentional conduct of naming and labeling which are voluntary, and not specifically required conduct by the FDA regulations.  Defendant selected the name and label described herein in order to maximize the label's deceptive impact upon Plaintiffs and other consumers. Indeed, FDA regulations did not require Defendant to name its products "Bear Naked's 100% Natural Real Nut Energy Bar, Peanut Butter," "Bear Naked's 100% Natural Real Nut Energy Bar, Maple Nut," "Bear Naked's 100% Natural Real Nut Energy Bar, Almond Cranberry," or "Bear Naked's 100% Real Nut Energy Bar, Chocolate Chip Peanut Butter," as opposed to "Bear Naked Real Nut Energy Bar, Peanut Butter," "Bear Naked Real Nut Energy Bar, Maple Nut," "Bear Naked Real Nut Energy Bar, Almond Cranberry," "Bear Naked Real Nut Energy Bar, Chocolate Chip Peanut Butter," or a myriad of other options. Defendant made these labeling decisions because of its marketing strategy. Defendant's marketing misleads consumers into believing that its Bear Naked Real Nut Energy Bars Products are entirely "100% Natural." Defendant's marketing campaign is designed to cause consumers to buy Bear Naked Real Nut Energy Bars Products as a result of this deceptive message, and Defendant has succeeded.

52.     Florida's safe harbor doctrine will not shield Defendant from liability.  Florida's safe harbor provision provides, "the relevant analysis…is whether…the moving party has demonstrated that a specific federal or state law affirmatively authorized it to engage in the

conduct alleged…not whether [the plaintiffs] have demonstrated that [the Defendant's] conduct violates a specific rule or regulation." *State of Fla., Office of Atty. Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.,* 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005). To succeed, Defendant must demonstrate that federal or state law permits the specific practice at issue; it is not sufficient for the Defendant merely to show that the federal or state government, or an agency thereof, has regulated generally in the area. *See Peters v. Keyes Co*., No. 10-60162-CIV, 2010 WL 1645095, at *4 (S.D. Fla. Apr. 21, 2010).

53.     "Compliance with regulations does not immunize misconduct outside the regulatory scope." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc*., 133 F. Supp. 2d 162, 175 (E.D.N.Y. 2001); *accord Sclafani v. Barilla Am., Inc*., 796 N.Y.S.2d 548 (2005). As in *Sclafani*, some of the elements of the relevant packaging and labeling alleged to be deceptive fall outside the scope of the applicable federal regulations."  Making deceptive statements cannot be considered compliance with federal rules, regulations, and statutes.  *See People ex rel. Spitzer v. Gen. Elec. Co., Inc.,* 756 N.Y.S.2d 520, 524 (2003).

54.     Several courts in previous food labeling cases have held that the FDCA does not preempt state law claims based on requirements identical to FDA regulations.  In order to escape preemption by the FDCA, "[t]he plaintiff must be suing for conduct that violates the FDCA." *See In re: Medtronic Inc., Sprint Fidelis Leads Prods. Liability Litig*., 623 F.3d 1200, 1204 (8th Cir. 2010); *Perez v. Nidek Co*., 711 F. 3d 1109, 1119 (9th Cir. 2013); *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806,814 (1997).

55.     The FDCA provides that only the federal government – and in limited cases, states – may bring suit to enforce its provisions. See 21 U.S.C. § 337. But it does not preempt all state law.  *See* Nutrition Labeling and Education Act of 1990, Pub. L. No. 101-535, § 6(c)(1)

("The Nutrition Labeling and Education act of 1990 shall not be construed to preempt any provision of State Law, unless such provision is expressly preempted under… the Federal Food, Drug, and Cosmetic Act.").  Indeed, the Act expressly contemplates that states will enforce their own food labeling requirements.  See 21 U.S.C. § 343-1(a). Such requirements, though, must be "identical" to those provided by the FDCA. *Id*. To survive a preemption challenge, therefore, a state-law food labeling claim must thread a "narrow gap."  The plaintiff must be suing for conduct that violated the FDCA, but the plaintiff must not be suing *because* the conduct violates the FDCA. *Perez v. Nidek Co*., 711 F. 3d 1109, 1120 (9th Cir. 2013).  Plaintiffs here have threaded this gap.

56.     The FDCA generally prohibits misleading labeling.  *See* 21 U.S.C. § 343(a) ("A food shall be deemed to be misbranded" if "its labeling is false or misleading in any particular."). Furthermore, although the FDA has not issued a regulation defining the word natural, it has articulated a "policy," defining natural to mean, "that nothing artificial or synthetic…has been included in, or has been added to, a food that would not normally be expected to be in the food." *See* 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993); *see also* FDA Warning Letter to Alexia Foods, Inc. (Nov.16, 2011), http://www.fda.gov/ICECI.Enforcementactions/WarningLetters/ecm281118.htm (describing SAPP as "a synthetic chemical preservative," and stating that the term "All Natural" on a food product containing SAPP "is false and misleading"). The conduct Plaintiffs allege – that Defendant misled customers by labeling as "100% Natural" food products that contain tocopherols, glycerin, and lecithin, synthetic ingredients – thus violates the FDCA. Plaintiffs have not, however, sued because the conduct violates the FDCA.  Rather, their claims are based on Florida statues as well as the common law, law that could exist, "even if the FDCA were

never passed." *Werdebaugh v. Blue Diamond Growers,* No. 12-cv-02724-LHK, 2013 WL

5487236, at *7 (N.D. Cal. Oct. 2, 2013).

57.     It is plausible that a reasonable consumer, such as Plaintiffs and members of the

Class, could interpret the words "100% Natural" to exclude synthetic compounds such as

tocopherols, glycerin, and lecithin, and therefore be misled by Defendant's labeling.  *See, e.g.,*

*Vicuna v. Alexia Foods, Inc.,* No. 11-6119 (PJH), 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27,

2012) (holding that "whether a reasonable consumer" of a product that contains SAPP "would

likely be deceived by the designation *All Natural* is a factual dispute" that cannot be resolved at

the motion to dismiss stage); *see also Janney v. Mills,* No. 12-cv-03919 (WHO), 2014 WL

1266299, at *3 (N.D. Cal. Mar. 26, 3014) (collecting cases in which "[c]ourts have found similar

claims challenging the terms 'all natural' and 'natural' to be sufficient basis for a cause of action

under California's consumer protection laws"); *Morales v. Unilever U.S., Inc.,* No. 13-cv-2213

(WBS), 2014 WL 1389613, at *7 (E.D. Cal. Apr. 9, 2014) (explaining that "the relevant

question" in a deceptive labeling case "is the meaning that consumers would attach to the term"

at issue and that "this is generally not a question that can be resolved on a motion to dismiss");

*Von Koenig v. Snapple Beverage Corp.,* 713 F. Supp. 2d 1066, 1080 (E.D. Cal. 2010)

("[P]laintiffs allege that they were deceived by the labeling of defendant's drink products as 'All

Natural' because they did not believe that the product would contain [high fructose corn

syrup]…[P]laintiffs have stated a plausible claim that a reasonable consumer would be deceived

by defendant's labeling.").

***Defendant's Strategy to Appeal to Health-Conscious Consumers***

58.     Defendant engaged in this fraudulent advertising and marketing scheme because it

knew that its target market pays more for "100% Natural" food products than for conventional

food products. This is due to the association consumers make between "100% Natural" food products and a wholesome way of life, the perceived higher quality, health and safety benefits of the products, and/or low impact on the environment.

59.     As such, Defendant's "100% Natural" labeling is central to its marketing of the Products and part of its overall strategy to capture the rapidly expanding natural foods market. As a result, Defendant commands a premium price for the Products; using "100% Natural" claims to distinguish them from its competitors' food products.

60.     As Defendant is reasonably aware, many American consumers are health-conscious and seek out wholesome natural foods to keep a healthy diet.  Because of this, consumers routinely take nutrition information into consideration in selecting and purchasing food items.

61.     Consumers also value "100% Natural" ingredients for countless other reasons, including perceived benefits of avoiding disease, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and financially supporting the companies that share these values.

62.     Product package labels, including nutrition labels, are vehicles that convey nutrition information to consumers, which they can and do use to make purchasing decisions. As noted by food and Drug Administration Commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet."

63.     The prevalence of claims about nutritional content on food packaging in the United States has increased in recent years as manufacturers have sought to provide consumers with nutrition information and thereby influence their purchasing decisions.  The results of a

recent FDA Food Labeling and Package Survey found that approximately 4.8 percent of food products sold in the United States had either a health claim or qualified health claim on the food package, and that more than half (53.2%) of the food products reviewed had nutrient content claims on the packaging.

64.     Consumers attribute a wide range of benefits to foods made entirely of natural ingredients.  Consumers perceive "100% Natural" foods to be higher quality, healthier, safer to eat, and less damaging to the environment.

65.     Catering to consumers' taste for natural foods is tremendously advantageous for business.  In 2008, foods labeled with the word "natural" produced $22.3 billion in sales, a 10% increase from 2007, and a 37% increase from 2004.  In 2009, sales jumped again by an additional 4%.

66.     It was in an effort to capture the growing demand and to entice consumers to purchase its Products that Bear Naked committed the unlawful acts detailed in this Complaint.

67.     Consumers lack the ability to test or independently ascertain the accuracy of a food product label, especially at the point of sale. Reasonable consumers must and do rely on the company to honestly report the nature of a food product's ingredients.

68.     Moreover, not having the specialized food chemistry and regulatory knowledge necessary to make independent determinations thereof, a reasonable consumer would interpret the fine-print ingredient label in a way to be consistent with the front label representation.

69.     Food product companies intend for consumers to rely upon their products' labels, and reasonable consumers do, in fact, so rely.  Those labels are the only available source of information consumers can use to make decisions on whether to buy "100% Natural" food products.

70.     As a result of its false and misleading labeling, Defendant was able to sell its Products to thousands, if not hundreds of thousands of consumers, throughout the United States, and to profit handsomely from these transactions.

**_Defendant's Knowledge of the Falsity of its Advertising_**

71.     Defendant had knowledge of the false representations that were made regarding the Bear Naked Real Nut Energy Bars Products, insofar as all of those representations appeared on the Bear Naked Real Nut Energy Bars Products' packages.

72.     Defendant had knowledge of the synthetic ingredients that were added to each Product, as all product ingredients are listed on the product packages and all of the Bear Naked Real Nut Energy Bars Products' ingredients are further disseminated on Defendant's website.

73.     Defendant is governed by and has knowledge of the federal regulations that control the labeling of its food Products and, thus, was aware that some of the ingredients have been federally declared as synthetic substances and/or require extensive processing to be safely used as a food ingredient.  Defendant has retained expert nutritionists, food chemists, and other scientists, and has spent much time and money in developing its own food technologies, such that it was aware that the synthetic substances used in its Products are not natural.

74.     As such, Defendant had knowledge of all facts demonstrating that its "100% Natural" Bear Naked Real Nut Energy Bars Products contain synthetic substances and that the Products were falsely labeled.

75.     The misrepresentation and omissions were uniform and were communicated to Plaintiff, and to each member of each class, at the point of purchase and consumption.

***Purchasers of Misbranded Bear Naked Real Nut Energy Bars Products Have Been Injured***

76.     Plaintiffs read and reasonably relied on the labels as described herein when buying Bear Naked's Products. The front and back label of Bear Naked's Subject Products appear as follows:



**Ingredients:** WHOLE GRAIN OATS, HONEY, PEANUTS, PEANUT BUTTER (PEANUTS), BROWN RICE SYRUP, CRISP RICE (RICE FLOUR, SUGAR, MALT EXTRACT, SALT, MIXED TOCOPHEROLS FOR FRESHNESS), WHOLE FLAXSEED, SOYBEANS, ISOLATED SOY PROTEIN, SEA SALT, SOY LECITHIN, SPICE EXTRACTIVES FOR FRESHNESS.



**Ingredients:** WHOLE GRAIN OATS, HONEY, ALMOND BUTTER (ALMONDS), BROWN RICE SYRUP, CASHEWS, CRISP RICE (RICE FLOUR, SUGAR, MALT EXTRACT, SALT, MIXED TOCOPHEROLS FOR FRESHNESS), WHOLE FLAXSEED, SOYBEANS, NATURAL PEANUT BUTTER (PEANUTS), PEANUTS, PECANS, ALMONDS, MAPLE

SYRUP, ISOLATED SOY PROTEIN, NATURAL FLAVOR, SEA SALT, SOY LECITHIN, SPICE EXTRACTIVES FOR FRESHNESS.



**Ingredients:** WHOLE GRAIN OATS, HONEY, ALMOND BUTTER (ALMONDS), ALMONDS, BROWN RICE SYRUP, CRANBERRIES, SOYBEANS, WHOLE FLAXSEED, PEANUT BUTTER (PEANUTS), CANE SYRUP, CRISP RICE (RICE FLOUR, SUGAR, MALT EXTRACT, SALT, MIXED TOCOPHEROLS FOR FRESHNESS), ISOLATED SOY PROTEIN, COCONUT, VEGETABLE GLYCERIN, SEA SALT, SOY LECITHIN, SPICE EXTRACTIVES FOR FRESHNESS.



**Ingredients:** WHOLE GRAIN OATS, HONEY, PEANUT BUTTER (PEANUTS), SEMISWEET CHOCOLATE (CANE SYRUP, CHOCOLATE LIQUOR, COCOA BUTTER, SOY LECITHIN, VANILLA, MILK), PEANUTS, BROWN RICE SYRUP, WHOLE FLAXSEED, CRISP RICE (RICE FLOUR, SUGAR, MALT EXTRACT, SALT, MIXED TOCOPHEROLS FOR FRESHNESS), SOYBEANS, ISOLATED SOY PROTEIN, CHOCOLATE LIQUOR, SEA SALT, SOY LECITHIN, SPICE EXTRACTIVES FOR FRESEHNESS.

77.     Plaintiffs relied on Defendant's labeling, and based and justified the decision to purchase Bear Naked Real Nut Energy Bars Products in substantial part, on these labels.

78.     At point of sale, Plaintiffs did not know, and had no reason to know, that Bear Naked Real Nut Energy Bars Products contained synthetic chemical ingredients.

79.     At point of sale, Plaintiffs did not know, and had no reason to know, that Bear Naked Real Nut Energy Bars Products were unlawful and misbranded.

80.     Had Plaintiffs been aware of these material facts, they would not have bought Bear Naked Real Nut Energy Bars Products.

81.     As a result of Defendant's unlawful misrepresentations, Plaintiffs and millions of others in Florida and throughout the United States purchased Bear Naked Real Nut Energy Bars Products.

82.     Defendant's labeling as alleged herein is false and misleading and was designed to increase sales of the Bear Naked Real Nut Energy Bars Products.

83.     Defendant's misrepresentations are part of its systematic labeling practice.

84.     A reasonable person would attach importance to Defendant's misrepresentations in determining whether to purchase Bear Naked Real Nut Energy Bars Products.

85.     Plaintiffs' purchase of Bear Naked Real Nut Energy Bars Products damaged them.

86.     Such purchases damaged Plaintiffs because, *inter alia*, misbranded products are illegal and have no economic value.

87.     Such purchases damaged Plaintiffs because, *inter alia,* Plaintiffs had cheaper alternatives available and paid an unwarranted premium for Bear Naked Real Nut Energy Bars Products.

88.     All purchasers of Bear Naked Real Nut Energy Bars Products were injured.

## CLASS ACTION ALLEGATIONS

89.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil

Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in Florida who, within the Class Period, purchased Bear Naked Real
> Nut Energy Bars Products, labeled "Bear Naked's 100% Natural Real Nut Energy
> Bar, Peanut Butter," "Bear Naked's 100% Natural Real Nut Energy Bar, Maple
> Nut," "Bear Naked's 100% Natural Real Nut Energy Bar, Almond Cranberry," or
> "Bear Naked's 100% Natural Real Nut Energy Bar, Chocolate Chip Peanut
> Butter," (the "Class").

90.     In the alternative, Plaintiffs bring this action as a class action pursuant to

Federal Rule of Civil Procedure 23(b)(2) and 23(b)(c) on behalf of the following class:

> All persons in the United States who, within the Class Period, purchased Bear
> Naked Real Nut Energy Bars Products, labeled "Bear Naked's 100% Natural Real
> Nut Energy Bar, Peanut Butter," "Bear Naked's 100% Natural Real Nut Energy
> Bar, Maple Nut," "Bear Naked's 100% Natural Real Nut Energy Bar, Almond
> Cranberry," or "Bear Naked's 100% Natural Real Nut Energy Bar, Chocolate
> Chip Peanut Butter," (the "Class").

91.     The following persons are expressly excluded from the Class: (1) Defendant and

its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the

proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its

staff.

92.     This action can be maintained as a class action because there is a well-defined

community of interest in the litigation and the proposed Class is easily ascertainable.

93.     **Numerosity:** Based upon Defendant's publicly available sales data with respect

to Bear Naked Real Nut Energy Bars Products, it is estimated that the Class numbers are

potentially in the millions, and the joinder of all Class members is impracticable.

94.     **Common Questions Predominate:** This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members. Thus, proof of a common set of facts will establish the right of each Class member to recover. Questions of law and fact common to each Class member include, for example:

a.     Whether Defendant engaged in unfair, unlawful or deceptive business practices by failing to properly package and label Bear Naked Real Nut Energy Bars Products sold to consumers;

b.     Whether the food products at issue were misbranded or unlawfully packaged and labeled as a matter of law;

c.     Whether Defendant made unlawful and misleading claims regarding the "100% Natural" characteristic of the Bear Naked Real Nut Energy Bars Products;

d.     Whether Defendant violated Florida's Consumer Protection Statues §§501.201-501.213 (2014), Florida Deceptive and Unfair Trade Practice Act, False Advertising pursuant to Fla. Stat. § 817.44 (2014), Breach of Express Warranty; Breach of Implied Warranties for Merchantability and Usage of Trade Pursuant to Fla. Stat. §672.314 (2014), Breach of Implied Warranty pursuant to Uniform Commercial Code §2-314 (2014).

e.     Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief;

f.     Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiffs and the Class;

g.     Whether Defendant acted negligently by its deceptive practices;

h.     Whether Defendant was unjustly enriched by its deceptive practices.

95.     **Typicality:** Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased Defendant's products during the Class Period. Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein, irrespective of where they occurred or were experienced. The injuries of each member of the Class were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

96.     **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor their counsel have any interests that conflict with or are antagonistic to the interests of the Class members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the members of the Class. Plaintiffs and their counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharged those duties by vigorously seeking the maximum possible recovery for the Class.

97.     **Superiority:** There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they are not parties. Class Action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

and without the unnecessary duplication of effort and expense that numerous individual actions would create. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

98.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive or equitable relief with respect to the Class as a whole.

99.     The prerequisites to maintaining a class action pursuant to Fed R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

100.     Plaintiffs and their counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

101.     Plaintiffs are members of the Class they seek to represent.  Plaintiffs' claims are typical of the Class members' claims. Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiff's claims are typical and representative of the Class.

102.    There are no unique defenses that may be asserted against Plaintiffs individually, as distinguished from the Class. The claims of Plaintiffs are the same as those of the Class.

103.    This class action is superior to any other method for the fair and efficient adjudication of this dispute.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF FLORIDA CONSUMER PROTECTION STATUTES §501.201- §501.213, FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

104.    Plaintiffs realleges and incorporate by reference the allegations contained in paragraphs 1 through 103 above as if fully set forth herein.

105.    Defendant's conduct constitutes unlawful, unfair and deceptive business acts and trade practices.

106.    Defendant sold the Bear Naked Real Nut Energy Bars Products in Florida during the Class Period.

107.    Florida Consumer Protection Statue §501.204 (2012) prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising. For the reasons discussed above, Defendant has engaged in unfair, false, deceptive, untrue and misleading advertising in violation of Fla. Stat. §§501.201-501.213 (2014).

108.    The Florida Deceptive and Unfair Trade Practices Act also prohibits any, "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in conduct of any trade or commerce." Defendant has violated Fla. Sat. §501.204's prohibition against engaging in unlawful acts and practices by, *inter alia,* making the false and deceptive representations, and also through its omissions of material facts, as set forth more fully

herein, and violating 21 U.S.C. §342, 21 U.S.C. §343, 21 U.S.C. §379aa-1, 15 U.S.C. §45 (a)(I),

49 Fed. Reg. 30999 (Aug. 2, 1984), Federal Food, Drug and Cosmetic Act §402(f)(1)(A), and the

common law.

109.    Plaintiffs and the Class reserve the right to allege other violations of law which

constitute other unlawful business acts or practices. Such conduct is ongoing to this date.

110.    Defendant's acts, omissions, misrepresentations, practices and non-disclosures as

alleged herein also constitute "unfair" business acts and practices within the meaning of The

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§501.201-501.213 (2014), in that

its conduct is substantially injurious to consumers, offends public policy, and is immoral,

unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged

benefits attributed to such conduct.

111.    As stated in this Complaint, Plaintiffs allege violations of consumer protection,

unfair competition, and truth-in-advertising laws in Florida resulting in harm to consumers.

Defendant's conduct constitutes violations of the public policies against engaging in false and

misleading advertising, unfair competition and deceptive conduct towards consumers as

proscribed by Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§501.201-501.213

(2014).

112.    There were reasonably available alternatives to further Defendant's legitimate

business interests, other than the conduct described herein.

113.    Defendant's false claims, nondisclosures and misleading statements, as more fully

set forth above and collectively as a scheme, were intentionally misleading and likely to deceive

the consuming public within the meaning of Florida Deceptive and Unfair Trade Practices Act.

114.    Defendant's deceptive conduct constitutes a prohibited practice, which directly and proximately caused and continues to cause substantial injury to Plaintiffs and the other Class members. Plaintiffs and Class members have suffered injury in fact, actual damages, and have lost money as a result of Defendant's unlawful, unfair and fraudulent conduct.  Plaintiffs' damages are the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.  Defendant's deceptively labeled, and falsely advertised, and misbranded products have little to no market value.

115.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

116.    Plaintiffs, on behalf of himself, and all others similarly situated, seek restitution and disgorgement of all money obtained from Plaintiffs and the members of the Class collected as a result of unfair competitions, an injunction prohibiting Defendant from containing such practices, corrective advertising, including providing notification of the product's health risks, and all other relief this Court deems appropriate, consistent with Florida Deceptive and Unfair Trade Practices Act.

### COUNT II

### VIOLATION OF FLORIDA INTENTIONAL
### FALSE ADVERTISING STATUTE §817.44

117.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 103 above as if fully set forth herein.

118.    Defendant knowingly and intentionally engaged in false advertising concerning the true characteristics of the ingredient contents of the Bear Naked Real Nut Energy Bars

Products. Defendant's conduct was consumer-oriented and this conduct had a broad impact on consumers at large.

119.     Defendant's actions were unlawful and under the circumstances, Defendant had actual knowledge of the falsity, or at the very least ought to have known of the falsity thereof.

120.     Fla. Stat. § 817.44 (2014) defines "false advertising," as, "invitations for offers for the sale of any property, real or personal, tangible or intangible, or any services, professional or otherwise, by placing or causing to be placed before the general public, by any means whatever, an advertisement describing such property or services as part of a plan or scheme with the intent not to sell such property or services so advertised."

121.     Defendant intentionally, and falsely advertised the Bear Naked Real Nut Energy Bars Products are being "100% Natural" in Florida and throughout the United States.

122.     As fully alleged above, by intentionally and knowingly advertising, marketing, distributing and selling the mislabeled Bear Naked Real Nut Energy Bars Products to Plaintiffs and other members of the Class who purchased the Bear Naked Real Nut Energy Bars Products in Florida, Defendant engaged in, and continues to engage in, false advertising in violation of Fla. Stat. § 817.44 (2014).

123.     Defendant's misleading marketing, advertising, packaging and labeling of the Bear Naked Real Nut Energy Bars Products were likely to deceive reasonable consumers.

124.     Plaintiff and other members of the Class who purchased the Bear Naked Real Nut Energy Bars Products in Florida were deceived.

125.     Absent such injunctive relief, Defendant will continue to falsely and illegally advertise the Bear Naked Real Nut Energy Bars Products to the detriment of consumers in the state of Florida.

126.     As a direct and proximate cause of Defendant's violation of Fla. Stat. § 817.44 (2014), Plaintiffs and the members of the Class who purchased the Bear Naked Real Nut Energy Bars Products in Florida were injured when they paid good money for these illegal and worthless products.

127.     As a result of Defendant's unlawful false advertising practices, Plaintiffs and the members of the Class who purchased the Bear Naked Real Nut Energy Bars Products in Florida, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to Plaintiffs and the members of the Class any money paid for the Bear Naked Real Nut Energy Bars Products pursuant to Fla. Stat. § 817.44 (2014).

128.     Plaintiffs and the members of the Class are also entitled to attorneys' fees.

## COUNT III

### BREACH OF EXPESS WARRANTY; MERCHANTABILITY; USAGE OF TRADE PRUSUANT TO § 672.314 FLORIDA STATUTES

129.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 103 above as if fully set forth herein.

130.     Plaintiffs, and each member of the Class, formed a contract with Defendant at the time Plaintiffs and the other members of the Class purchased the Bear Naked Real Nut Energy Bars Products. The terms of that contract included the express and implied promises and affirmations of fact that the product was "100% Natural."  The Bear Naked Real Nut Energy Bars Products' packaging and advertising constitute express and implied warranties, became parts of the basis of the bargain, and are parts of a standardized contract between Plaintiffs and the members of the Class on the one end, and Defendant on the other.

131.    At all times, and as detailed above, Defendant expressly warranted that its products were safe, effective and fit for use by consumers, including Plaintiffs and the Class, for their intended use, that they were of merchantable quality, and that they did not produce dangerous side effects.

132.    At the time of making these and other express and implied warranties with respect to the ingredients of Bear Naked Real Nut Energy Bars Products, Defendant knew or should have known that it had breached the terms of the contract, including the express and implied warranties with Plaintiffs and the Class, by providing the Bear Naked Real Nut Energy Bars Products named "Bear Naked's 100% Real Nut Energy Bar, Peanut Butter," "Bear Naked's 100% Natural Real Nut Energy, Bar Maple Nut," "Bear Naked's 100% Natural Real Nut Energy Bar, Almond Cranberry," or "Bear Naked's 100% Natural Real Nut Energy, Bar Chocolate Chip Peanut Butter," that contained the synthetic chemical ingredients, tocopherols, glycerin and lecithin.

133.    Members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of Defendant, and upon said express and implied warranties, when purchasing Bear Naked Real Nut Energy Bars Products.

134.    Plaintiffs and the Class purchased Bear Naked Real Nut Energy Bars Products without knowledge that these products contained synthetic chemical ingredients; tocopherols, glycerin, and lethicin.

135.    Due to Defendant's illegal conduct as alleged herein, Plaintiffs and the Class could not have known about the true content of the Bear Naked Real Nut Energy Bars Products.

136.    As a direct and proximate result of Defendant's breach of its contract, including the breach of express and implied warranties with respect to the Bear Naked Real Nut Energy

31

Bars Products, plaintiffs suffered injuries as set forth above, entitling Plaintiffs to judgment and equitable relief against Defendant, as well as restitution, including all monies paid for the Bear Naked Real Nut Energy Bars Products and disgorgement of profits from Defendant received from sales of the Bear Naked Real Nut Energy Bars Products, attorneys' fees, and costs, as set forth in the Prayer for Relief.

137.    All conditions precedent to Defendant's liability under this contract, including providing Defendant with pre-suit notice, have been performed by Plaintiffs and the Class.

**COUNT IV**

**BREACH OF IMPLIED WARRANTY PURSUANT TO UNIFORM
COMMERICAL CODE §2-314**

138.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 103 above as if fully set forth herein.

139.    The Uniform Commercial Code §2-314 provides that, unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of the kind.

140.    At all times, Florida has codified and adopted the provisions the Uniform Commercial Code governing the implied warranty of merchantability. Fla. Stat. §672.314 (2014).

141.    Bear Naked Real Nut Energy Bars Products are "goods" as defined in the various states' commercial codes governing the implied warranty of merchantability, including Florida.

142.    As designers, manufacturers, licensors, producers, marketers, and sellers of Bear Naked Real Nut Energy Bars Products, Defendant is a "merchant" within the meaning of the various states' commercial codes governing the implied warranty of merchantability, including Florida.

143.    By placing the Bear Naked Real Nut Energy Bars Products in the stream of commerce, Defendant impliedly warranted that the Products' claims on their packaging were true, i.e. "100% Natural."

144.    As merchants of the Bear Naked Real Nut Energy Bars Products, Defendant knew that purchasers relied upon them to design, manufacture, license and sell products that were not deceptively marketed, and in fact members of the public, including Plaintiffs, reasonably relied upon the skill and judgment of Defendant and upon said implied warranties in purchasing and consuming the Bear Naked Real Nut Energy Bars Products.

145.    Plaintiffs and the Class members purchased the Bear Naked Real Nut Energy Bars Products for their intended purpose.

146.    Bear Naked Real Nut Energy Bars Products' defects were not open or obvious to consumers, including Plaintiffs and the Class, who could not have known about the true nature and contents of the Bear Naked Real Nut Energy Bars Products.

147.    As a direct and proximate result of Defendant's breach of implied warranties, Plaintiffs and Class members have sustained injuries by purchasing the Bear Naked Real Nut Energy Bars Products, which were not as represented, thus entitling Plaintiffs to judgment and equitable relief against Defendant, as well as restitution, including all monies paid for the Bear Naked Real Nut Energy Bars Products and disgorgement of profits from Defendant received from sales of the Products, attorneys' fees, and costs, as set forth in the Prayer for Relief.

## COUNT V

## NEGLIGENCE

148.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs through 103 above as if fully set forth herein.

149.     Defendant had a duty to represent its products accurately.  Defendant breached that duty by purposefully or negligently making misrepresentations of fact and omissions of material fact to Plaintiffs and the other Class members about the Bear Naked Real Nut Energy Bars Products.

150.     Defendant failed to label or advertise the Bear Naked Real Nut Energy Bars Products in a lawful manner and violated duties owed to consumers by purposefully or negligently engaging in the conduct described herein.

151.     Plaintiffs and the other Class members, as a direct and proximate cause of Defendant's breach of its duties, were damaged by receiving worthless products, or at the very least, misbranded deceptively labeled products.

152.     As described above, Defendant's actions violated a number of express statutory provisions designed to protect Plaintiffs and the Class.

153.     Defendant's illegal actions constitute negligence *per se*.

154.     Moreover, the statutory food labeling and misbranding provisions violated by Defendant are strict liability provisions.

155.     By reason of the foregoing, Plaintiffs and the other Class members have suffered damages in an amount to be determined at trial, together with punitive damages.

## COUNT VI

## UNJUST ENRICHMENT

156.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 103 above as if fully set forth herein.

157.    As a result of Defendant's fraudulent and misleading labeling, advertising, marketing, and sales of the Bear Naked Real Nut Energy Bars Products, Defendant was enriched at the expense of Plaintiffs and the Class.

158.    Defendant sold the Bear Naked Real Nut Energy Bars Products, which was a product that was illegally sold, illegally branded and had no economic value, to Plaintiffs and the Class.

159.    It would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiffs and the Class in light of the fact that the products were not what Defendant purported them to be.

160.    Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiffs and the Class of all monies paid to Defendant for the Bear Naked Real Nut Energy Bars Products at issue.

161.    As a direct and proximate result of Defendant's actions, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of their claims.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similarly situated persons, pray for judgment against Defendant as follows:

A.    For an order certifying this case as a Class Action and appointing Plaintiffs and their counsel to represent the Class;

B.    That the Court adjudges and decrees that Defendant has engaged in the conduct alleged herein;

C.      Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

D.      Ordering Defendant to engage in a corrective advertising campaign;

E.      Awarding Plaintiffs and the proposed Class members damages;

F.      Awarding restitution and disgorgement to Plaintiffs and the other Class members;

G.      Awarding Plaintiffs and the Classes punitive damages;

H.      Awarding Plaintiffs treble damages;

I.      Awarding attorneys' fees and costs; and

J.      Providing such further relief as may be just and proper.

Dated: January 8, 2015

Respectfully submitted,


*/s/ Tim Howard*
Tim Howard, J.D., Ph.D.
Florida Bar No.: 655325
**HOWARD & ASSOCIATES, P.A.**
2120 Killarney Way, Suite 125
Tallahassee, FL 32309
Telephone: (850) 298-4455
Fax: (850) 216-2537
tim@howardjustice.com